H. M. HOLLOWAY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26737.   Promulgated October 12, 1953.

*Adam Y. Bennion, Esq.*, for the petitioner.
*H. Arlo Melville, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge:* The issue in this proceeding is whether the petitioner is entitled to depletion allowances based upon discovery value, as provided in sections 23 (m) and 114 (b) (2), Internal Revenue Code, in connection with its operations, during the taxable years, in the mining and sale of gypsum from sections 11 and 14 of the Richfield lease. The petitioner, in its income tax returns for the fiscal years ended June 30, 1946, and June 30, 1947, claimed depletion deductions based upon discovery value in the amounts of $29,284.32 and $41,233.79, respectively. The respondent determined that the petitioner was not entitled to the claimed deductions for depletion based upon discovery value, and, in his notice of deficiency, allowed the petitioner depletion deductions in each of the taxable years, based on cost, in the amounts of $928.43 and $1,222.44, respectively.

Section 23 (m), Internal Revenue Code, provides that in computing net income there shall be allowed as deductions, in the case of mines, a reasonable allowance for depletion, such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction shall be equitably apportioned between the lessor and lessee. Section 23 (n), Internal Revenue Code, provides that the basis upon which depletion is to be allowed shall be as provided in section 114. Section 114 (b) (2), Internal Revenue Code, establishes the basis for discovery depletion, in the case of mines discovered by the taxpayer after February 28, 1913, as the fair market value of the property at the date of discovery or within 30 days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. Section 114 (b) (2) of the Code, as of the applicable date, is printed in the margin.[1]

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(b) BASIS FOR DEPLETION.—

\*        \*        \*        \*        \*        \*        \*

(2) DISCOVERY VALUE IN CASE OF MINES.—In the case of mines (other than metal, coal, or sulphur mines) discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. The depletion allowance under section 23 (m) based on discovery value provided in this paragraph shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property upon which the discovery was made, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to discovery value. Discoveries shall include minerals in commercial quantities contained within a vein or deposit discovered in an existing mine or mining tract by the taxpayer after February 28, 1913, if the vein or deposit thus discovered was not merely the uninterrupted extension of a continuing commercial vein or deposit already known to exist, and if the discovered minerals are of sufficient value and quantity that they could be separately mined and marketed at a profit.

The burden of proof is upon the petitioner to establish (1) that it made the discovery, which was made after February 28, 1913; (2) the date of its discovery; (3) the fair market value of the property on the date of discovery or within 30 days thereafter; (4) whether such fair market value was disproportionate to the cost; and (5) other facts necessary for the computation of the depletion allowances. See Regulations 111, sec. 29.23 (m)-1, 3, 7, and 14; *Reinecke* v. *Spalding*, 280 U. S. 227; *H. O. Miller*, 10 B. T. A. 450; *M. W. Brellahan, et al.*, 11 B. T. A. 489; *Robert Roberts*, 20 B. T. A. 345; *Parker Gravel Co.*, 21 B. T. A. 51; *Dunn & Baker, Inc.*, 30 B. T. A. 663, affirmed per curiam 80 F. 2d 1010.

The principal question presented is when and by whom the deposit was discovered which is a question of fact, essentially. The petitioner makes two contentions, that it made the discovery, and that the date of discovery was on October 1, 1945.

The respondent argues that discovery was made at sometime prior to October 1, 1945, the discovery date urged by the petitioner, either by Richfield, or by H. M. Holloway, or by the petitioner. He argues, further, that, if the Court should find that the deposit was discovered by the petitioner prior to December 8, 1944, the petitioner had no depletable economic interest in the deposit on the discovery date, since the Richfield lease was not formally assigned to the petitioner until December 8, 1944. The respondent takes the position that, in order for a taxpayer to qualify for discovery depletion, the taxpayer must have a depletable economic interest in the deposit on the discovery date.

We have carefully considered certain circumstances emphasized by the respondent in his arguments, namely, the report prepared by Ricco at the direction of Richfield in 1940, and the fact that, prior to the date the petitioner was incorporated, H. M. Holloway secured letter authority to do exploratory work and obtained two leases from Richfield, which letter authorizations and leases embraced first a part, and later all, of the discovery area. We are satisfied, however, from all the evidence and the record before us, and we have found as a fact, that the deposit was discovered by the petitioner.

Both Ricco and H. M. Holloway died prior to the trial of these proceedings. It is evident, however, from the report prepared by Ricco that the gypsum deposits therein referred to were the surface deposits and outcroppings present along the ridges and flanks of the Lost Hills structure. The deposit in question is an underground deposit situated in the basin or low lands of the Lost Hills area. The evidence also shows that the underground deposit was not connected, physically or geologically, with any surface deposits and outcroppings. The deposit in question was therefore unknown to, and was not discovered by Richfield as a result of Ricco's investigation and report.

We are also satisfied that the deposit was not discovered by H. M. Holloway. There is nothing in the record to support the inference urged by the respondent that H. M. Holloway had knowledge of the existence of the deposit prior to the date petitioner commenced its drilling operations. There were no surface outcroppings in the discovery area to indicate the presence of an underground deposit. Knox worked for H. M. Holloway continuously from December 1941 until the date the petitioner was incorporated. His testimony that there was no evidence of any drilling having been done in the discovery area by H. M. Holloway prior to December 1941, and that there was none thereafter is convincing. Furthermore, we think it, is a fair inference from the facts that if H. M. Holloway had done any drilling in the discovery area pursuant to the letter authority of July 18, 1940, and had any knowledge of the deposit, he would have included in the lease of January 8, 1941, the acreage in section 11 lying west of the highway which contains about 40 per cent of the deposit.

We therefore conclude that the deposit in question was discovered by the petitioner. The authorities relied on by the respondent, principally, *Alamo Coal Co.*, 31 B. T. A. 869, and *Clarence P. Sidwell*, 11 T. C. 826, are distinguishable on their facts from this proceeding. In each of the cited cases, it was found as a fact that the taxpayer had purchased or leased a proven tract of land.

We turn next to a consideration of when the discovery date within the meaning of section 114 (b) (2) of the Code occurred. The Code does not contain a definition of the term "discovery." The regulations, Regulations 111, section 29.23 (m)–14 (*b*), define the term discovery as follows:

(*b*) A mine or minerals of a kind not excepted by this section may be said to be discovered when (1) there is found a natural deposit of mineral, or (2) there is disclosed by drilling or exploration, conducted above or below the ground, a mineral deposit not previously known to exist and the existence of which was so improbable that such deposit had not and could not have been included in any previous valuation for the purpose of depletion, and which in either case exists in quantity and grades sufficient to justify commercial exploitation.

Subsection (*e*) of the same regulation provides as follows:

(*e*) The value of property claimed as the result of a discovery must be the fair market value, as defined in section 29.23 (m)–7, based on what is evident within 30 days after the commercially valuable character and extent of the discovered deposits of mineral have with reasonable certainty been established, determined, or proved.

The respondent contends that, if the petitioner in fact made the discovery, the discovery date occurred in November 1944, after the drilling of the first 254 core holes by the petitioner disclosed substantial underground deposits of gypsum in the discovery area. The petitioner argues that the date of discovery, within the meaning of the

statute and the Commissioner's regulations, did not occur until October 1, 1945, after the data ascertained by the drilling of 182 additional core holes by the petitioner established, with reasonable certainty, the commercial grade, the boundaries, and the probable extent and tonnage of the deposit. We agree with the petitioner.

The fact that a mineral deposit in substantial quantity is disclosed by the drilling of test core holes does not, of itself, give rise to a discovery date within the meaning of the statute and the regulations. The date of discovery, as contemplated by the statute and the regulations, in our opinion, occurs when the commercial grade, the extent and probable tonnage of the deposit, and the fact that commercial exploitation of the deposit is justified, have been ascertained with reasonable certainty from investigation and analyses. This appears evident from the requirement of the statute that the deposit be valued, for discovery depletion purposes, as of the date of discovery, or within 30 days thereafter. Unless the commercial grade and the probable extent and tonnage of the deposit are determined with reasonable accuracy, valuation of the deposit would become a speculation based on unfounded assumptions.

The evidence and record in this proceeding establishes, and we have found as a fact, that the date of discovery by the petitioner was October 1, 1945. The discovery, and valuation date of October 1, 1945, are supported by the testimony of Wents, the petitioner's consulting geologist, and by the plottings and data appearing on the working map prepared by Wents. We note, also, that while the respondent claims the discovery was evident in November 1944, he does not contend that delay, if any, by the petitioner in making claim therefor has resulted or will result in excessive allowances for depletion. See Regulations 111, sec. 29.23 (m)–14 (c).

The respondent concedes that the petitioner had a depletable economic interest in the property at all times subsequent to December 8, 1944, and that the fair market value of the petitioner's interest in the deposit on October 1, 1945, was $139,850. His argument, on brief, that the petitioner failed to prove that the fair market value of the property on the date of discovery was materially disproportionate to the cost, is without merit.

It is held that the petitioner is entitled to depletion allowances based upon discovery value in connection with its operations, during the taxable years, in the mining and sale of gypsum from sections 11 and 14 of the Richfield lease.

Since other adjustments made by the respondent have been conceded by the petitioner

*Decision will be entered under Rule 50.*